IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Brian P. MULARSKI, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Brian P. MULARSKI, Respondent.

Supreme Court of Wisconsin

*No. 2008AP85–D.—Decided September 10, 2010.*

2010 WI 113

(Also reported in 787 N.W.2d 834.)

¶ 1. PER CURIAM. The Office of Lawyer Regulation (OLR) has filed a disciplinary complaint charging Attorney Brian P. Mularski with 13 counts of misconduct in three client matters. Attorney Mularski is also subject to eight pending grievance investigations not yet charged. Attorney Mularski petitions for the consensual revocation of his Wisconsin law license. He states he cannot successfully defend himself against the professional misconduct alleged in the complaint and the pending investigations. Also, he states he will perform an accounting and make the appropriate restitution.

¶ 2. Referee John Fiorenza has filed his recommendation that Attorney Mularski's license to practice law in Wisconsin be revoked. Referee Fiorenza also recommends that Attorney Mularski provide an accounting of all the funds he misappropriated, and prove he has made restitution to those aggrieved by his misconduct.

¶ 3. Attorney Mularski was admitted to practice law in Wisconsin in 2000 and has practiced most recently in Milwaukee. He has not been subject to prior discipline. His license is currently suspended, however, for noncompliance with dues and trust account certification requirements.

¶ 4. We grant the petition and revoke Attorney Mularski's license to practice law in this state. As a condition of any future petition for reinstatement, Attorney Mularski shall provide an accounting and demonstrate he has made full restitution to those individuals aggrieved by his misconduct as alleged in

the OLR complaint and the pending investigations. Attorney Mularski is ordered to pay the costs of this proceeding.

¶ 5. The OLR complaint alleges the following misconduct:

E.P. CLIENT MATTER (COUNTS 1 THROUGH 6)

¶ 6. In November 2004 E.P. retained Attorney Mularski in a personal injury matter. The contingent fee agreement was not reduced to writing. Although Attorney Mularski did not have E.P.'s permission to settle the case for $45,000, Attorney Mularski informed a casualty claims examiner that he would settle E.P.'s claim for $45,000 and pay the medical providers' liens with settlement proceeds.

¶ 7. In mid-December 2004 Attorney Mularski received a $45,000 check from the insurer, along with a release to be signed by E.P. Attorney Mularski did not inform the lien holders of the receipt of the funds. He deposited the funds in his law firm's trust account, but then ceased working at the firm. On January 5, 2005, the firm issued a check to the Mularski Law Offices trust account in the amount of $40,416.67 transferring the settlement funds (less attorney fees which had already been paid). Attorney Mularski informed his former firm that the settlement was supposed to be $55,000, not the $45,000 received. He informed the firm he would be returning the $45,000 to the insurer and would file suit on his client's behalf. However, when his former law firm attempted to confirm the settlement arrangement with the insurer, the firm was advised the claim had been settled for $45,000, including medical liens.

¶ 8. On January 8, 2005, E.P. signed a release stating the matter had been settled for $58,000. Attor-

ney Mularski issued a $10,000 check to his law office for legal fees and a $28,000 check to E.P. He advised E.P. he needed to resolve some issues with the insurer before he could give her the remainder of the settlement proceeds.

¶ 9. Attorney Mularski sent the insurer a letter on February 11, 2005, stating he would send the release that day and would be responsible for handling the outstanding medical liens. Attorney Mularski sent the insurer a signed release for $45,000, purportedly signed by E.P. However, the signature on the release was not E.P.'s.

¶ 10. On April 14, 2005, Attorney Mularski issued a check from his trust account to E.P. for $6,124.56, with the notation "Settlement Reimbursement." Although Attorney Mularski's client trust account had only $40,416.67 attributable to E.P., he had disbursed a total of $44,124.56 from his trust account relative to E.P.'s case.

¶ 11. Attorney Mularski agreed to refund to E.P. $10,000 in fees. He refunded $6,000 from his personal funds. He did not promptly satisfy the medical liens. During the OLR investigation, Attorney Mularski was unable to produce E.P.'s file or any trust account records relating to his representation of E.P.

¶ 12. The OLR's disciplinary complaint charges six counts arising from Attorney Mularski's misconduct in the E.P. matter:

- *Count One.* By failing to reduce his contingent fee agreement to writing, Attorney Mularski violated former SCR 20:1.5(c);[1]

---

[1] Former SCR 20:1.5(c) (effective through June 30, 2007) provided:

- *Count Two.* By informing the claims examiner that his client would settle for $45,000, without obtaining his client's agreement to settlement in that amount, Attorney Mularski violated former SCR 20:1.2(a);[2]

- *Count Three.* By failing to provide medical lien holders with written notice of his receipt of the settlement funds and by failing to satisfy the liens, Attorney Mularski violated former SCR 20:1.15(d)(1);[3]

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

[2] Former SCR 20:1.2(a) (effective through June 30, 2007) provided:

A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[3] Former SCR 20:1.15(d)(1) (effective July 1, 2004, through June 30, 2007) provided:

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law

277

- *Count Four*. By disbursing $44,124.56 from his trust account when he was holding only $40,416.67 in trust, thereby disbursing funds belonging to another party, Attorney Mularski violated former 20:1.15(b)(1);[4]

- *Count Five*. By failing to maintain trust account records, Attorney Mularski violated former SCR 20:1.15(e)(6);[5] and

- *Count Six*. By making a number of misrepresentations to the insurer and his law firm, by modifying the release and obtaining his client's signature on the altered release, and by forging his client's signature on the release which was sent to the insurer, Attorney Mularski violated SCR 20:8.4(c).[6]

## K.C. CLIENT MATTER (COUNTS 7 THROUGH 9)

¶ 13. The next matter involves K.C, who retained Attorney Mularski to represent him regarding an auto-

or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[4] Former SCR 20:1.15(b)(1) (effective July 1, 2004, through June 30, 2007) provided:
A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer' s possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[5] Former SCR 20:1.15(e)(6) (effective July 1, 2004, through June 30, 2007) stated, "A lawyer shall maintain complete records of trust account funds and other trust property and shall preserve those records for at least 6 years after the date of termination of the representation."

[6] SCR 20:8.4(c) provides it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

mobile accident. K.C. and his wife signed a release settling the matter with the insurer for $19,100. The settlement provided that funds totaling $6,121.33 were held in Attorney Mularski's law firm trust account to pay some of the medical bills.

¶ 14. On May 26, 2006, the date the release was signed, Attorney Mularski issued to K.C. a check for $10,000. Checks were also issued to three medical providers, along with two checks to Attorney Mularski's law firm totaling $6,355 and $55 for costs. These disbursements left only $695 in trust for the remaining medical bills. Attorney Mularski failed to inform K.C. that he was holding only $695 toward the remaining medical bills. Also, Attorney Mularski failed to notify the medical providers of his receipt of the settlement funds and failed to pay the medical liens.

¶ 15. On July 28, 2006, after receiving collection notices from the remaining medical care providers, K.C. requested Attorney Mularski relinquish any funds held for payment of the remaining bills. Attorney Mularski issued a check to K.C. for $695. The checks that had allegedly been issued to three medical providers on May 26, 2006, were not mailed to the providers until late September 2006 after K.C. had filed a grievance with the OLR. Attorney Mularski requested the medical providers accept a reduced payment and each medical provider negotiated a reduced amount.

¶ 16. As a result of Attorney Mularski's handling of the K.C. matter, the OLR complaint alleges three counts of misconduct:

- *Count Seven.* By failing to submit four of his client's medical bills and by failing to ensure payment

279

was timely sent to the other three medical providers, Attorney Mularski violated SCR 20:1.3;[7]

- *Count Eight.* By failing to adequately explain to his client that only $695 was held to cover the remaining medical bills, Attorney Mularski violated SCR 20:1.4(b);[8] and

- *Count Nine.* By indicating on the settlement statement that medical providers had agreed to certain reductions when they had not done so, and by indicating to those same medical providers that the settlement K.C. received was insufficient to cover their bills when, in fact, it was sufficient, Attorney Mularski violated SCR 20:8.4(c).

## A.W. CLIENT MATTER (COUNTS 10 THROUGH 13)

¶ 17. On April 24, 2006, Allstate Insurance Company issued a settlement check payable to Attorney Mularski's law firm, to Attorney Mularski's client, A.W., and to a medical center which had a lien on the settlement proceeds. The check was deposited into Attorney Mularski's law firm trust account and appeared to have been endorsed by all three payees, including the medical center. Attorney Mularski did not notify the medical center of his receipt of the settlement funds or provide any payment of its lien.

¶ 18. In September 2006, when a representative from a financial recovery firm attempted to collect on the medical center's lien, the representative was informed that A.W.'s matter had been settled and a check had been issued and negotiated. The representative of

---

[7] SCR 20:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[8] SCR 20:1.4(b) provides, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

the financial recovery firm discovered that the medical center's signature on the check appeared to be forged.

¶ 19. Attorney Mularski informed the OLR that another financial recovery firm, AAM, Inc., had authorized him to endorse the check on the medical center's behalf. Attorney Mularski stated he forwarded a copy of the check to AAM. Attorney Mularski eventually paid the medical center's lien with his personal funds after a grievance was filed with the OLR.

¶ 20. Attorney Mularski provided the OLR with a copy of a letter he allegedly sent to AAM, which was later found to have been fabricated and was provided to mislead the OLR. AAM was not representing the medical center, but was retained to collect a bill A.W. incurred with the Itasca Fire Department. Although Attorney Mularski had informed AAM that a check had been cut for the Itasca Fire Department, AAM never received the check. Eventually, A.W. paid the bill directly.

¶ 21. As a result of his misconduct in the A.W. matter, Attorney Mularski was charged with four violations:

- *Count Ten.* By failing to notify a medical provider of the settlement and by immediately distributing the settlement proceeds to his client, despite the existence of a lien by the medical provider, Attorney Mularski violated former SCR 20:1.15(d);[9]

---

[9] Former SCR 20:1.15(d) (effective July 1, 2004, through June 30, 2007) provided, in pertinent part:

(1) Notice and disbursement. Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

- *Count Eleven.* By endorsing a check on a medical provider's behalf when he did not have the authority to do so, Attorney Mularski violated SCR 20:8.4(c);

- *Count Twelve.* By misrepresenting to the OLR the circumstances under which he endorsed the check on the medical provider's behalf, thus making a misrepresentation during the course of an investigation, Attorney Mularski violated SCR 22.03(6);[10] and

- *Count Thirteen.* By submitting to the OLR a fabricated letter allegedly having been sent to a collection agency, when the letter had in fact not been sent and contained information contrary to the information Attorney Mularski had previously provided the OLR during the course of the investigation, Attorney Mularski violated SCR 22.03(6).

¶ 22. In addition to the allegations of the OLR complaint, Attorney Mularski states that he is unable to defend himself against allegations made in eight pending grievance investigations for which no disciplinary complaint has yet been filed, as follows:

### C.U. CLIENT MATTER

¶ 23. Attorney Mularski was retained to represent C.U. in a personal injury matter. After obtaining a settlement on C.U.'s behalf, Attorney Mularski failed to

---

(2) Accounting. Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly tender a full written accounting regarding the property.

[10] SCR 22.03(6) provides:

In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

hold the funds in trust, failed to satisfy a medical lien held by C.U.'s health insurance company, failed to maintain proper trust account records and, during the OLR's investigation, Attorney Mularski made misrepresentations to the OLR regarding his communications with and records obtained from a bank. The OLR began an investigation into misconduct involving trust account violations and misrepresentation to the OLR during its investigation.

## J.C. CLIENT MATTER

¶ 24. After the statute of limitations had run, Attorney Mularski filed a complaint in a personal injury matter on behalf of J.C. alleging that J.C.'s accident had occurred one year after its actual occurrence. The complaint was eventually dismissed for failure to prosecute. Attorney Mularski never informed J.C. of the dismissal; instead, he forwarded a fabricated release purportedly from the defendant's insurance company allegedly settling the matter for $125,000. After making several misrepresentations to J.C, Attorney Mularski admitted to her that he had made mistakes in her case that would prevent her from collecting from the defendant's insurance company. The OLR commenced an investigation regarding misconduct involving lack of diligence, failure to properly inform the client of circumstances regarding her case, lack of candor toward a tribunal, and dishonesty, fraud, deceit or misrepresentation.

## K.W. CLIENT MATTER

¶ 25. Attorney Mularski was retained by K.W. to file a claim against the City of Milwaukee. Attorney Mularski told K.W. her claim had settled and would be paid out over two years. K.W. began receiving monthly

payments eventually totaling $30,000, allegedly from the proceeds of the purported settlement. Attorney Mularski failed to respond to K.W.'s request for her file. When K.W. contacted the City of Milwaukee regarding the matter, she was informed no claim had been filed on her behalf and no settlement had been reached. Attorney Mularski admitted that he had been paying K.W. with his personal funds. The OLR began an investigation regarding misconduct involving diligence, communication, and conduct involving dishonesty, fraud, deceit or misrepresentation.

## E.D. CLIENT MATTER

¶ 26. Attorney Mularski was retained by E.D. in a personal injury matter, which settled for the policy limit of $50,000. Attorney Mularski also settled with the driver individually for an additional $10,000. Attorney Mularski has been unable to provide any releases or settlement documents related to E.D.'s case. E.D. received some of the settlement proceeds and was told additional funds would be held to pay his medical providers. Although one provider was paid by Attorney Mularski, another was never paid, resulting in a judgment being entered against E.D. The OLR began an investigation into misconduct involving communication with a client and conduct involving dishonesty, fraud, deceit or misrepresentation.

## CD. CLIENT MATTER

¶ 27. Attorney Mularski represented C.D. in a personal injury matter that settled for $44,750. Attorney Mularski retained $10,000 of the settlement funds to pay various creditors; however, the creditors were not paid. Records from Attorney Mularski's former law firm indi-

cate that Attorney Mularski forged endorsements on the checks made out to C.D.'s medical providers and converted the funds for his personal use. Attorney Mularski has since repaid the firm and the firm in turn has paid C.D.'s creditors. The OLR commenced an investigation into misconduct involving trust account violations and dishonesty, fraud, deceit or misrepresentation.

## S.C. CLIENT MATTER

¶ 28. Attorney Mularski represented S.C. in a small claims action against her landlord and obtained a judgment on S.C.'s behalf of $5,000 plus costs. S.C.'s grievance asserts that Attorney Mularski failed to take adequate steps to collect on the judgment and misled her regarding a court date allegedly set to hear the collection matter. The OLR commenced an investigation regarding a lack of diligence and dishonesty, fraud, deceit or misrepresentation.

## J.H. CLIENT MATTER

¶ 29. Attorney Mularski represented J.H. in personal injury and property damage matters. Attorney Mularski obtained a settlement on J.H.'s behalf in both matters. Attorney Mularski conceded he continues to hold funds belonging to J.H., has failed to act with diligence in his representation of J.H., and has failed to adequately communicate with J.H. The OLR commenced an investigation regarding misconduct involving a lack of diligence, failure to communicate, and trust account violations.

## S.D. CLIENT MATTER

¶ 30. Attorney Mularski represented S.D. in a personal injury matter. Attorney Mularski represented to S.D. that he had obtained a settlement on her behalf

and sent her approximately $80,000. There is no evidence that a settlement was ever reached and S.D. signed no papers with respect to any settlement. S.D. claims Attorney Mularski failed to communicate throughout the representation and she never entered into a written fee agreement, despite Attorney Mularski's representing her on a contingent fee basis. The OLR commenced an investigation into misconduct involving failure to communicate, fees, and dishonesty, fraud, deceit or misrepresentation.

¶ 31. After Attorney Mularski filed the petition for consensual revocation, the court issued orders to show cause requiring the parties to address restitution. In response, the OLR contends that of the 11 client matters, five former clients are entitled to restitution in amounts ranging from just over $700 to approximately $12,000, for a total of approximately $19,000. Attorney Mularski asserts that no funds are due to any client. His response is not consistent with his petition, which states that he would provide an accounting and make appropriate restitution.

¶ 32. We accept Attorney Mularski's petition for the revocation of his license to practice law in Wisconsin. *See* SCR 22.19(1), (2), and (5).[11] The seriousness of

---

[11] SCR 22.19(1), (2), and (5) provide:

(1) An attorney who is the subject of an investigation for possible misconduct or the respondent in a proceeding may file with the supreme court a petition for the revocation by consent or his or her license to practice law.

(2) The petition shall state that the petitioner cannot successfully defend against the allegations of misconduct.

. . .

(5) The supreme court shall grant the petition and revoke the petitioner's license to practice law or deny the petition and remand the matter to the director or to the referee for further proceedings.

Attorney Mularski's misconduct demonstrates the need to revoke his law license to protect the public, the courts, and the legal system from the repetition of misconduct, to impress upon Attorney Mularski the seriousness of his misconduct, and to deter other attorneys from engaging in similar misconduct. *See In re Disciplinary Proceedings Against Arthur*, 2005 WI 40, ¶ 78, 279 Wis. 2d 583, 694 N.W.2d 910.

¶ 33. We order restitution to be paid as a condition of any reinstatement petition. In the case of *In re Disciplinary Proceedings Against Dugan*, 112 Wis. 2d 653, 656–57, 334 N.W.2d 228 (1983), the court revoked the attorney's license and required him to show he made full restitution to his clients at such time as he would seek reinstatement. *See also In re Disciplinary Proceedings Against Grade*, 2007 WI 108, ¶ 15, 304 Wis. 2d 531, 735 N.W.2d 523. We employ that procedure here. At such time as he would seek reinstatement, Attorney Mularski shall prove he has made full restitution to those individuals aggrieved by his misconduct as set forth in the complaint and the pending OLR investigations. *See* SCR 22.29(4m).[12]

¶ 34. We impose full costs. The OLR seeks costs totaling $1,304.82 as of December 22, 2009. Under SCR 22.24(lm),[13] to award less than full costs, the court

---

[12] SCR 22.29(4m) states a petition for reinstatement shall show:
The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client protection for all payments made from that fund, or, if not, the petitioner's explanation of the failure or inability to do so.

[13] SCR 22.24(1m) reads, in part:
The court's general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of

must find "extraordinary circumstances." Attorney Mularski has not objected to the costs and has not alleged extraordinary circumstances to justify a reduction in costs. Consequently, Attorney Mularski shall bear the entire costs of this disciplinary proceeding.

¶ 35. IT IS ORDERED that the license of Brian P. Mularski to practice law in Wisconsin is revoked, effective the date of this order.

¶ 36. IT IS FURTHER ORDERED that Brian P. Mularski comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

¶ 37. IT IS FURTHER ORDERED that as a condition of reinstatement of his license to practice law in Wisconsin, Brian P. Mularski furnish a complete accounting and prove he has made full restitution to or settled all claims of all persons harmed by the misconduct subject of this proceeding as set forth in the complaint and investigations appended to the petition for revocation.

¶ 38. IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Brian P. Mularski shall pay the Office of Lawyer Regulation the costs of this proceeding.

---

counsel for the office of lawyer regulation, upon the respondent. In cases involving extraordinary circumstances the court may, in the exercise of its discretion, reduce the amount of costs imposed upon a respondent.